UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ESTATE OF EDMUND M. CARMAN, )<br>      Plaintiff, )<br>)<br>     v. )<br>)<br>DANIEL B. TINKES, ALDRIDGE )<br>ELECTRIC, INC., and DPR IRON, LLC, )<br>      Defendants. ) | Cause No.: 2:12-CV-348-PRC |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 23], filed on June 17, 2013, and Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment [DE 34], filed on October 2, 2013.

**I. Procedural Background**

Edmund M. Carman died on April 2, 2011, just after 7:30 a.m., from injuries he sustained earlier that morning when his 2003 Kia Spectra crashed into the rear right corner of a Ford F-350 utility truck. Plaintiff, the Estate of Edmund M. Carman, filed a three-count wrongful-death Complaint against Defendants on August 30, 2012. Count I alleges that Defendant Daniel B. Tinkes (the driver of the truck) is liable; Count II alleges that Defendant Aldridge Electric, Inc. (Tinkes's employer) is liable; and Count III alleges that Defendant DPR Iron, LLC (the owner of the truck) is liable. Defendants filed an Answer on October 29, 2012, denying any negligence.

Defendants moved for summary judgment on June 17, 2013, and filed a Rule 56 Motion to Strike on October 2, 2013. The Motion for Summary Judgment was fully briefed on October 4, 2013; the related Motion to Strike was fully briefed on October 16, 2013.

The parties have orally agreed on the record to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this

case. This Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II. Motion to Strike

As a threshold matter, Defendants ask the Court to strike Plaintiff's entire response or, in the alternative, to strike various parts of its response. The Court considers each argument in turn.

### A. Defective Response Brief

Defendants begin by arguing that the Court should strike the entire response because Plaintiff did not include a "Statement of Genuine Disputes," as required by Northern District of Indiana Local Rule 56-1(b)(2). Plaintiff concedes noncompliance, but argues that the omission was a mistake and that its brief made clear enough the factual issues in dispute.

In entering his appearance in this case, Plaintiff's counsel swore or affirmed under the penalties of perjury that he had read the Local Rules and that he would comply with them. The Court would be within its discretion to insist on strict compliance, even to the point of granting summary judgment. *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004)); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994).

But Plaintiff's Counsel's failure should not keep his client from getting a decision on the merits. *See Stevo*, 662 F.3d at 887 ("Local rules, like the Federal Rules of Civil Procedure that they supplement, should be construed to provide for the 'just, speedy, and inexpensive determination of every action' on its merits." (quoting Fed. R. Civ. P. 1)). This case, as Plaintiff points out, is a straightforward negligence suit, and the factual disputes are evident in the briefing. The Court accordingly denies Defendants' request that the Court strike Plaintiff's entire response.

*B. Headlights and Exhibit L*

Defendants also argue that this Court should strike Plaintiff's statements about the Kia's headlights being "likely on" and Exhibit L, which Plaintiff uses to support that conclusion on the basis that Plaintiff did not lay a proper foundation. Exhibit L appears to be a Yahoo! website page stating that the 2003 Kia Spectra came with standard "Automatic Headlights With Automatic Off." Plaintiff contends that Exhibit L is self-authenticating under Federal Rule of Evidence 902(7), which provides that potential evidence with "an inscription, sign, tag, or label purporting to have been affixed in the course of business and indicating origin, ownership, or control" is self-authenticating.

Defendants point to *In re Homestore.com, Inc. Sec. Litig.*, in which a California District Court held that "[p]rintouts from a web site do not bear the indicia of reliability demanded for other self-authenticating documents under Fed. R. Evid. 902. To be authenticated, some statement or affidavit from someone with knowledge is required." 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004); *accord Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ("Anyone may purchase an internet address, and so, without proceeding to discovery or some other means of authentication, it is premature to assume that a webpage is owned by a company merely because its trade name appears [on it]." (citing *United States v. Jackson*, 208 F.3d 633, 638 (7th Cir. 2000))).

Exhibit L has even less going for it than the printout in *Homestore* since it lacks both a URL and a date stamp. 347 F. Supp. 2d at 782. This Court agrees with the holding of *Homestore* and accordingly strikes Exhibit L and all parts of Plaintiff's brief that assert that the Kia's headlights were on.

*C. The Bumper, Blood Alcohol, and Indiana Code §§ 9-21-8-6 & 9-21-8-24*

Finally, Defendants argue that certain parts of Plaintiff's response to the Motion for

3

Summary Judgment discussing the bumper, Carman's blood-alcohol level at the time of the crash, and two Indiana traffic laws should be stricken. For the reasons laid out in the analysis section below, the Court denies these requests as moot.

### IV. Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56 (c)). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof

at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110–11 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all

facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249–50.

## V. Material Facts

It was still dark outside at 5:30 a.m. on April 2, 2011, when Edmund M. Carman's 2003 Kia Spectra crashed into the back passenger side of a white Ford F-350 utility truck while headed west along U.S. 20. The impact ripped open the driver's side of the Spectra, severely injuring Mr. Carman. Emergency responders took him to Methodist Hospital, where he died of his wounds at around 7:30 a.m. The accident happened at the intersection of U.S. 20 (which runs east–west) and Utah (which runs north–south) in Gary, Indiana. U.S. 20 is six lanes wide at the intersection—two lanes proceed straight in each direction and each direction has a left-turn lane.

The version of events most favorable to Plaintiff is that the F-350 that Carman struck was pulling into the left-turn lane of west-bound U.S. 20 ahead of a similar white utility truck at the time of the accident. Presumably, the other truck had not pulled up to the light, and there was a stretch of road between it and the intersection. At least some of Tinkes's truck was still in the forward-proceeding lane at the time of impact.

Undisputed are a handful of important facts about the accident:

1. Tinkes's lights were on;
2. Carman's lights were off;
3. The traffic light on U.S. 20 governing the intersection showed red at the time of the accident;

4. Carman did not honk his horn before the accident;
5. There were no skid marks from Carman's Kia at the accident scene; and
6. Carman was driving quickly at the time of the accident.

Also undisputed are several facts about the Ford F-350 Carman crashed into:

1. Tinkes was driving the F-350 at the time of the crash;
2. Aldridge Electric employed Tinkes at the time of the crash;
3. DPR Iron owned the F-350 at the time of the crash;
4. The F-350 had a Gross Vehicle Weight Rating of 13,000 pounds;
5. The frame or body of the F-350 extended more than sixty inches beyond the rear axle and more than forty-two inches above the roadway;
6. The F-350's bumper extended within thirty inches of the roadway;
7. The F-350's bumper was of substantial construction but not of solid steel;
8. When delivered, the bumper was painted white and had reflective stickers;
9. At the time of the accident, most of the paint and stickers had worn away;
10. The F-350 was licensed and tagged as a commercial vehicle and was registered with the United States Department of Transportation (DOT) as DOT # 543531;
11. The F-350 contained parts and accessories and was equipped as required by DOT regulations; and
12. The F-350's bumper complied with all DOT regulations.

## IV. Analysis

Defendants move for summary judgment on all of Plaintiff's claims. The Court considers each in turn.

### *1. Tinkes's Driving*

Plaintiff argues that Tinkes was violating two Indiana traffic laws when he pulled ahead of the other truck into the turn lane moments before the accident. Violation of a statute is evidence of negligence *per se* so long as the law "is intended to protect the class of persons in which the [party] is included and [serves] to protect against the risk of the type of harm which has occurred as a result of its violation." *Kho v. Pennington*, 875 N.E.2d 208, 212–13 (Ind. 2007) (quoting *Plesha v. Edmonds ex rel. Edmonds*, 717 N.E.2d 981, 986 (Ind. Ct. App. 1999)). Both statutes regulate traffic and thus exist in part to protect the safety of everyone on the road from car accidents.

The first, Indiana Code § 9-21-8-6, provides in relevant part that drivers may only pass on the right when conditions are safe and the car they are passing "is making or about to make a left turn." A juror could reasonably conclude that Tinkes broke this law, since the truck he passed was still some distance away from the intersection and was accordingly not "making or about to make a left turn." This supports a finding of negligence.

The second is Indiana Code § 9-21-8-24, which provides that drivers may not slow down, stop, turn "from a direct course upon a highway," or change lanes unless they can do so with reasonable safety. Aside from violating Indiana Code § 9-21-8-6, there is no evidence that Tinkes was unsafely stopping, slowing down, or turning. This thus adds nothing to a determination that Tinkes was negligent in passing the other truck on the right.

The next question is whether Tinkes's negligent act caused the accident. *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994) (quoting *Cowe by Cowe v. Forum Grp., Inc.*, 575 N.E.2d 630, 635 (Ind. 1991)). Proving causation requires showing at least "that the harm would not have occurred but for the defendants' conduct . . . . [That is,] absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm." *Id.* The only difference between what actually happened and what would have happened if Tinkes had not been negligent is that a reasonable driver would have stayed in the forward-proceeding lane. There is no reason to think that the accident would not have occurred under such circumstances. Indeed, Carman was driving quickly in darkness toward a red light with his headlights off. He did not brake, honk, or swerve to avoid rear-ending Tinkes. No reasonable juror could conclude from these facts that Tinkes's negligence in passing on the right caused the crash. The Court accordingly grants summary judgment in Tinkes's favor.

Moreover, since Plaintiff can successfully claim *respondeat superior* liability against an

employer only if the employee was liable, the Court grants summary judgment regarding Tinkes's driving in favor of DPR Iron (the owner of the truck) and Aldridge (Tinkes's employer). *See Cole v. Shults–Lewis Child and Family Serv's., Inc.*, 677 N.E.2d 1069, 1073 n. 4 (Ind. Ct. App. 1997), *opinion vacated on other grounds*.

## 2. The Bumper

Plaintiff's complaint also alleges that the truck's bumper violated Indiana law regarding the acceptable height of after-market bumpers and that it caused Carman's death. Indiana's bumper law does not apply to any vehicle that "(1) contains parts and accessories; and (2) is equipped . . . as required under regulations of the United States Department of Transportation." Ind. Code § 9-19-4-4. There is no dispute that the truck was registered with the DOT, bore US DOT # 543531, contained parts and accessories, and was equipped as required under DOT regulations. The Indiana statute thus does not apply.

Plaintiff rejoins that the Defendants have not shown any *specific* DOT regulations they complied with. This is true but irrelevant. Patrick Pineau's Affidavit states that the bumper complied with all DOT regulations. Defendants have thus "produced sufficient evidence to support a conclusion that there are no genuine issues for trial" on this point; the burden thus shifts to Plaintiff to show that an issue of material fact exists. *Becker*, 914 F.2d at 110–11(citations omitted); *see also Hong*, 993 F.2d at 1261. Plaintiff has not done so.

Moreover, even if the truck were not exempt from Indiana law, the truck's bumper complies with the otherwise-applicable section of Indiana law. Indiana Code § 9-19-4-3 governs vehicles, like the F-350, for which the frame or body of the truck extends more than sixty inches beyond the rear axle and more than forty-two inches above the roadway. The law requires that the bumper must be

9

on the extreme rear of the vehicle and "extend downward from the rear of the frame or body to within thirty inches of the roadway and must be of substantial construction." Ind. Code § 9-19-4-3. The construction and location of the bumper met both of these requirements.

Plaintiff argues that allowing the paint and reflective stickers to wear off was negligent, but makes no showing that this violated any duty Aldridge or DPR Iron had to Carman. There is no mention of paint or reflective stickers in the Indiana bumper law. Nor does Plaintiff cite any DOT regulation to that effect. This fact alone is not enough to create a genuine issue of material fact.

And even if allowing the bumper's paint and stickers to wear off was negligent, there is nothing in the record to support causation. Carman was driving quickly toward a red light with his headlights off. The reflective tape would thus not have reflected anything. No reasonable juror could find that the lack of reflective stickers or paint caused the accident. The Court thus grants Summary Judgment in favor of Aldridge and DPR Iron regarding the bumper.

## V. Conclusion

For these reasons, the Court hereby **GRANTS in part and DENIES in part** Defendants' Motion to Strike Plaintiff's Response to Defendants' Motion for Summary Judgment [DE 34] and **GRANTS** Defendants' Motion for Summary Judgment [DE 23] in favor of Defendants on all of Plaintiff's claims.

SO ORDERED this 26th day of November, 2013.

> s/ Paul R. Cherry
> MAGISTRATE JUDGE PAUL R. CHERRY
> UNITED STATES DISTRICT COURT

cc:   All counsel of record